CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
DEC 30 2005 for C'Ville
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN L. BOWMAN,<br><br>*Plaintiff,*<br><br>v.<br><br>PAUL ARPIN VAN LINES, INC.,<br><br>*Defendant.* | CIVIL ACTION NO. 3:05cv00062<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Motion to Dismiss, filed on November 7, 2005. For the following reasons, this Motion is hereby GRANTED.

## BACKGROUND

Plaintiff John L. Bowman ("Bowman") filed a motion for judgment in this case in the Circuit Court of Albemarle County on September 1, 2005. Defendant Paul Arpin Van Lines, Inc. ("Paul Arpin") received service of process on October 12, 2005, and removed the case to this Court on November 2, 2005. Bowman's claims arise from Paul Arpin's agreement to pack and transport his possessions from Massachusetts to Albemarle County, Virginia. The parties agreed that Bowman's possessions would be picked up and loaded on August 27, 2004, and delivered to his home in Keswick, Virginia between September 1 and 3. Bowman purchased additional insurance coverage for his possessions from Paul Arpin under the Full Replacement Value Protection Tariff ("FRVPT"). Bowman alleges that Paul Arpin's employees advertised to him

1

that this insurance would cover the full declared value of his possessions, and would protect, without exception, from loss, destruction, or damage while the property was in Paul Arpin's custody. Bowman declared the value of his possessions to be $100,000.00

Paul Arpin's employees picked up and loaded Bowman's property as agreed, and took it to Richmond, Virginia, where it arrived more than 24 hours before the scheduled delivery date. The tractor trailer containing Bowman's possessions was placed in a storage facility. The facility flooded due to heavy rains, and the possessions were severely damaged as a result.

Bowman alleges three grounds for relief: (1) under the Carmack Amendment, 49 U.S.C. § 14706, Paul Arpin is liable for all loss or injury to Bowman's possessions while in its care; (2) Paul Arpin's employees knowingly misrepresented the terms of the FRVPT, in violation of Virginia law; and (3) Paul Arpin's employees were negligent and grossly negligent, in violation of Virginia law.

Paul Arpin now moves to dismiss Counts Two and Three on the grounds that they are preempted by the Carmack Amendment, which provides Bowman's exclusive remedy for loss or damage to property moving in interstate commerce.

## DISCUSSION

Federal law preempts state and common law when Congress expressly provides that the federal law supplants state authority, or when Congress enacts a pervasive system of regulation which leaves no area in which a state can act. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993). Courts will also infer preemption where state regulation would impede Congress' purposes in enacting the federal legislation. *Id.*

The Carmack Amendment, 49 U.S.C. § 14706, governs the liability of common carriers under receipts and bills of lading. It provides in pertinent part that a motor carrier providing transportation or service is liable for the actual loss or injury it has caused to the property in its care. *Id.* The Supreme Court has read the Carmack Amendment to have broad preemptive scope, noting "almost every detail is covered so completely [by the Carmack Amendment] that there can be no rational doubt that Congress intended to take possession of the subject and supercede all state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913). Every other circuit, including the Fourth Circuit, has concurred in affording the Carmack Amendment broad preemptive power. *See, e.g., Shao*, 986 F.2d at 705 (holding that the Carmack Amendment preempted the plaintiff's common law claims); *Rehm v. Baltimore Storage Co.*, 300 F. Supp. 2d 408 (W.D. Va. 2004) (holding that the Carmack Amendment preempted plaintiffs' state and common law claims related to the claims process against a carrier).

Bowman, however, argues that despite the Carmack Amendment's broad reach, it does not apply to Counts Two and Three because they refer to separate and distinct activities that fall outside the Amendment's scope. Plaintiff argues that Paul Arpin's fraudulent misrepresentation of the FRVPT's terms occurred before the transportation of the property covered by the Carmack Amendment. Similarly, Plaintiff argues that Defendant's negligence occurred after the transportation of the property because the property was in storage in a warehouse when it was destroyed.

Both of these arguments misconstrue the preemptive reach of this law. As Bowman notes in his memorandum opposing Paul Arpin's Motion to Dismiss, "transportation" as defined by the Interstate Commerce Commission Termination Act of 1995 (ICCA) includes services related to

3

the movement of goods, including "*arranging for*, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, *storage*, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102 (emphasis added). The definitions in this section apply to the Carmack Amendment and plainly show that "transportation" does not have the narrow definition that Plaintiff seeks to impose. Rather, the term includes the arrangements made for the movement of goods, as well as the movement itself. In light of this definition, Plaintiff's argument that "arranged for" transportation services are distinct from the fraudulently induced agreement at issue makes little sense.

In addition, federal courts have found that claims of fraud, like other common law claims, are preempted by the Carmack Amendment. In *Richter v. North American Van Lines*, the court stated that some common law claims, such as intentional infliction of emotional distress or assault by a carrier, might fall outside the Carmack Amendment's preemption. However, claims based on how the shipping agreement was entered into or what the carrier's agent represented related to the contract of shipment all relate to the shipping contract, and thus are merged into Carmack Amendment actions. 110 F. Supp. 2d 406, 411 (D. Md. 2000). Here, what the carrier represented to Bowman is precisely the issue in Count Two. Other courts have also held the Carmack Amendment to preempt fraud claims. *See, e.g., Miracle of Life, LLC v. North American Van Lines, Inc.*, 368 F. Supp. 2d 494, 498 (D.S.C. 2005) (rejecting plaintiff's claims for common law fraud and unfair trade practices); *United Van Lines v. Shooster*, 860 F. Supp. 826, 828-29 (S.D. Fla. 1992) (holding that the Amendment preempted the plaintiff's claim based on a fraudulent weight estimate used to induce the shipping agreement).

Similarly, it is "widely accepted that the Amendment preempts . . . state and common

4

law claims against a carrier for loss or damage incurred to goods during shipment." *Miracle of Life*, 368 F. Supp. 2d at 497. In the present case, the damage to Plaintiff's goods is precisely the basis of his claim, and he alleges no separate injury apart from that damage. In *Smith v. United Parcel Service*, the plaintiffs attempted to argue that the carrier's misrepresentations that it would take additional steps to ensure delivery created a new relationship between the parties outside the reach of the Carmack Amendment. The court rejected this argument, noting that the injury claimed– the failure to deliver packages– nonetheless fell within the scope of the Amendment. 296 F.3d 1244, 1248-49 (11th Cir. 2002).

Similarly, in *Rehm v. Baltimore Storage Co.*, 300 F. Supp. 2d 408, 415 (W.D. Va. 2004), the court allowed the plaintiffs to proceed with a claim for real property damage, as this was a separate harm to property outside the regulatory intent of the Carmack Amendment. However, the court also held that the Carmack Amendment preempted plaintiffs' tort claims, because the duty between the plaintiffs and defendant had its basis in the contract and the legal relationship between shipper and carrier. *Id.* That logic applies in this case as well. Here, the relationship between the parties is quintessentially that of shipper and carrier, and plaintiff alleges no separate harm beyond the scope of the Amendment. Although he attempts to argue that Defendant's alleged fraud is distinct from the damage to his goods, precedent is not in his favor on this point.[1]

Bowman's third count, for negligence and gross negligence in Defendant's handling of his flood-damaged property, is also subject to preemption. Bowman argues that Count Three is

---

[1]Plaintiff's reliance on *Paine-Henderson v. Eastern Greyhound Lines, Inc.*, 320 F. Supp. 1138 (D.S.C. 1970) is thus misplaced. This case predates not only the Fourth Circuit's clear statement of preemption in *Shao v. Link Cargo (Taiwan) Ltd.*, but also the *Miracle of Life, LLC* case from the same district. Without exploring the extent of the conflict, if any, between these decisions, the Court will thus rely on more recent precedent.

5

outside the Carmack Amendment's scope because it occurred after the transportation of the goods. As noted above, "transportation" includes the storage of goods. 49 U.S.C. § 13102. Here, the transportation of the goods was plainly not complete, because they had not been delivered. Rather, the tractor trailer that contained them was parked in Richmond awaiting delivery. The mere fact that the tractor trailer was not moving cannot mean that the transportation of the goods was over, and Bowman cites no precedent for such an argument. Further, as discussed above, the Carmack Amendment preempts a claim when the interstate shipment of goods is the basis of the plaintiff's claim, and there is no cause of action divisible from that shipment. *See Taylor v. Mayflower Transit, Inc.*, 22 F. Supp. 2d 509, 511 (W.D.N.C. 1998). All of Bowman's claims are based on the damage to his property caused in transport between Massachusetts and Albemarle County, Virginia. The Carmack Amendment thus preempts Court Three of Plaintiff's claim as well.

Because the Carmack Amendment preempts Counts Two and Three, Bowman's claim for punitive damages is similarly unavailable. The Carmack Amendment imposes liability only for "actual loss or injury to the property caused by the carrier." 49 U.S.C. § 14706. It is well accepted that punitive damages are unavailable under the amendment. *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129, 137 (4th Cir. 1967); *Yakubu v. Atlas Van Lines*, 351 F. Supp. 2d 482, 491 (W.D. Va. 2004). Attorneys fees are available only in narrow circumstances. Although section 14708 provides for attorneys fees, that section only applies where a party has invoked the section's alternative dispute resolution provisions. *Id.* Here, the Court is without information on whether Bowman timely invoked this section and meets its requirements, and thus declines to rule on it at this time.

CONCLUSION

The Camrack Amendment, 49 U.S.C. § 14706, preempts Bowman's claims for fraudulent misrepresentation and negligence and gross negligence. It also bars recovery of punitive damages. An appropriate order shall issue this day.

ENTERED: /s/ Norman K. Moon
U.S. District Judge

December 30, 2005
Date

7